Good morning, Your Honors. May it please the Court, my name is Tim Becker, and I represent the appellants in this case, Michael and Vicki Henry. I'm from the Law Firm of Zimmerman Reed in Minneapolis, Minnesota. Your Honors, this case stems from a denial of the class certification motion brought by, on behalf of my clients. In denying the motion for class certification, the District Court essentially focused on three elements of Rule 23. First, commonality. Second, the combined review of typicality and adequacy. And finally, the superiority prong. With respect to the commonality element, the District Court expressed concern over the conflict that may arise with respect to individual communication and inquiry into individual communications between associates and the class at large. Specifically, the Court said essentially, you can't certify this class because we have to look at each and every particular debtor to examine what was said in each and every particular phone call. Now, I know that this Court is aware that Rule 23.82 spells out that commonality is determined from either a question that is common to the class of fact or of law. In our view in this case, the District Court erred with respect to commonality because it only looked at the fact aspect of the test. The issue in this case is whether or not the policy in and of itself, i.e. the policy to engage in and conduct post solicitation phone contact to require debtors to pay discharge debt and pass due debt following the filing of a bankruptcy petition, was in and of itself legal. In other words, the issue that we framed was, was or is a policy of post petition phone solicitation of per se violation of the code. That issue affects each and every one of the debtors who are in the class. It links all of the debtors in the class and applies equally to each one of them. If that issue is correct and we don't have the merits of this case resolved for purposes of the class, then the content of the phone call is not relevant because the call in and of itself triggers the violation. Turning to the typicality and adequacy requirement, the District Court expressed concern regarding two specific issues. First, Judge Trevesian was concerned about a conflict that the Henrys may have with other class, unnamed class members. And second, Judge Trevesian was concerned with a conflict in the law between the circuits affecting the ride-through option. With respect to the conflict to the class, the court essentially said, some members of the class may desire associate's policy to continue. But that is not a measure of whether or not an actual conflict exists. As noted in the brief in the Studervant v. Deere case, there was an actual conflict where two divergent groups of class members wanted two separate and opposite results. The Eastern District of Wisconsin in that court case said that the interests of the class were A, subsumed in the defendant's defense, and B, that the conflict was irrelevant because of the fact that the law was going to go one way or the other. And essentially, that's the issue here. If, in fact, post-discharge phone solicitation and post-phone solicitation is illegal, the fact that some class members may desire that conduct to continue is not a sufficient justification for concluding that a conflict exists. It's essentially saying that some class members want the law to continue to be violated and condone the violation. Therefore, we can't certify the class. That's not a basis for concluding that typicality and adequacy does not exist. Further, the district court's rationale overlooked the fact that those members who do want this conflict to continue to exist have the right to opt out of the class, don't have to be involved in the resolution of the issue, have the right to go their own separate way. Turning its attention to the conflict between the circuits, the court essentially said, in California, in the Ninth Circuit, we have the ride-through option. Four other circuits, or three other circuits, excuse me, also have that option, and four have concluded that the ride-through option does not exist. Therefore, the district court said, I can't certify a class because there's a conflict amongst Federal law. This precise issue was addressed in the Rainmaker's decision by the Southern District of New York. And on a motion for class certification, that court specifically noted that there was a conflict between First Circuit law and Second Circuit law. And the court specifically held that irrespective of the conflict between the circuits, not only is Federal law to be applied uniformly as one body of jurisprudence, but in addition to that, the district court was bound to follow the circuit in which it sat and was to evaluate the law from that perspective. Here, similarly, the district court should have applied the standard in this court, or in this circuit, evaluated law in this circuit, and not given credence to the fact that a conflict may or may not exist between the circuits because of the fact that Federal law is to be one uniform system. Finally, the court turned to the superiority requirement. And here, essentially, Judge Trevisan said that superiority does not exist in this case because individuals have a desire to control their own litigation. This is one of the aspects of the case that troubles me the most. First, stemming from bankruptcy, most of these cases in most of the class will have small claims, which is the essence of why superiority exists. In this case in particular, the compensatory damages were less than $7,000. The bankruptcy court awarded the Henrys $6,700. This case was filed in 1999. Four years later, we moved forward to the Court of Appeals. It was diligently fought along the entire way. And the suggestion that individuals with claims the size of the Henrys have a desire to engage in protracted litigation over a several-year period, I think, undermines and doesn't give credence to the level of damages versus the level of effort that goes into winning those cases. Well, the Henrys did. Well, that's true, Your Honor. But the Henrys brought this case as a putative class and brought it on the basis that the class would be protected, that the essence of the reason that the case was brought was to not only protect the interests of the Henrys, but to protect the interests of the class at large. What are the Henrys going to get out of it? The Henrys have already received their judgment from this, and the only issue left, because of the odd procedural posture that this case comes to the court, is the issue of class certification. And ultimately, resolution of the merits should the court remand the case back to the district court on the ultimate issues. So the Henrys have already been compensated in this case. So a commentator on television might say this is simply attorneys trying to grab a whole bunch of attorney's fees. Well, I can understand why a commentator may say that, but the problem is he may. And it may become a bestseller. The problem is, however, that the class claims are still germane to the rest of the unnamed class members, whose rights still have an opportunity to be litigated. And the fact that this case was litigated in a rather odd procedural posture doesn't deny that unnamed class members still have an interest in the litigation going forward. You're telling me something that I don't like to hear, but we hear it all the time now. Lawyers won't take a case unless there's a lot of money in it. Well, Your Honor, I don't... It's sad if that's true. I don't think that that... A $10,000 case, lawyers won't touch it. That's too bad. It cuts against the idea that lawyers are supposed to be professionals representing people who have problems. And we only take cases that have a lot of money involved in them. And I guess that's the way it works now. Well, Your Honor, I don't think that's what I'm saying. We... I heard you say that lawyers won't take these cases because there's only $7,000 to $10,000 in them. Well, lawyers won't take the cases if they're faced with years and years of litigation and no expectation of being paid. The problem in this... I mean, ultimately... That's too bad. It's too bad. Your Honor, I... Cases have a birthright. It's called the rule of law. And they can't use it because the lawyers aren't going to get paid. It's just too bad. Your Honor, I hear what you're saying. But the problem is, is that we live in an adversarial society with respect to how defendants are going to defend these cases. And the defendants... You know, I'm a plaintiff's attorney. I get paid when I win and if I win. The defendants get paid by the hour. And if the defendants are going to drag the process through a several-year process, you know, I'm going to go out of business. And that may be a commentary on whether or not the contingency fee system is a viable and adequate system. But it's also a reality of the system that we live in today. That's too bad, too. Well, and I agree with you. But it doesn't take away from the fact that that is precisely why the superiority requirement in this case is established. Because you've got masses of debtors who face the conduct that the associates engaged in that we believe was illegal, that the bankruptcy court ultimately found was illegal, and that have no opportunity for redress. So what you're saying is a lawyer will only take a case like this if a lawyer sees a class action at the end of the tunnel? No, I don't think that's true, Your Honor. I think that lawyers have to make business decisions and have to make practical decisions. And if they're engaged in a process where they're going to go against an aggressive defense firm and an aggressive defendant, that they can't take cases that they have no chance to have some sort of economic viability for the law firm. But to get back to Judge Trott's question, the answer is yes. In this case, the only way this case is going to be viable is if it's a class action and offers the rewards that a class action will offer. That's correct, Your Honor. In order to get... I don't disagree with that. But I also don't think it takes away from the fundamental fact that there was a wrong here, that there are multitudes of people that suffered from that wrong, and that those people's rights can be redressed uniformly in the class action system. I guess I'm just thinking out loud. It's too bad we have to have a nuclear war in order to solve small problems. That notwithstanding, let's go back for a second. You know, we have the same problem here in this case we had in the last case. The standard of review is abuse of discretion. That means you have to demonstrate to us that this judge, who was a Travisian, abused his discretion. You say, I guess your first point is he necessarily abused his discretion because he made an error of law and that he looked at the first question not as an or, but only as a fact and that your common element is wrong. Is that what you're saying? Well, Your Honor, actually I would posit to the Court that the standard of review is a combined abuse of discretion or misstatement or application of incorrect legal standards. My argument... He misapplied the legal standards. Yeah. I don't think I can win on an abuse of discretion standard. My argument is that he misapplied the standard by essentially leaping forward to the merits of the case, concluding what the merits are going to be, and then funneling that through his reasoning for denying the class. So, again, I concede I cannot win on abuse of discretion. We're relying on a misstatement and a misapplication of a legal standard. And here the Court ignored the law portion of Rule 23-A-2. And so what do you want us to do? Send it back and say, don't ignore the law portion? No, I want you to find that there – I want you to reverse the district court, not remand it. I want you to find that there is one common question of law applicable to the entire class, that a class – unnamed class member cannot hide behind illegal conduct to create a conflict or an antagonism between the class, and that this is, in fact, a prime case for class certification in terms of the fact that it's clear that people will not be represented, as this Court has recognized here in oral argument. That's the result I would like this Court to come to. All right. Why don't we go to the other side? Thank you, Your Honor. Good morning, Your Honors. Jan Chilton, Severson & Worson for the Defendant and Vigorous Litigant. Let me start off where the last argument ended, which is, indeed, abuse of discretion, and point out to the Court that not only is it, of course, a very lenient standard, but that the presentation by my esteemed colleague, Mr. Becker, has left out some very important factors that the trial court considered. Let's start with the first issue. It wasn't just commonality that Judge Tabrisian found was lacking. He had a combined analysis of commonality and predominance, not just Rule 23a.2, but 23b.3 was the focus of his concern. The per se illegality of a post-discharge phone call is not the only issue in this case. Quite clearly it is not, because if it was, this case would have gone away when Garfsky was decided by the bankruptcy appellate panel just about nine months ago. In Garfsky, Mr. Becker and I appeared before the bankruptcy appellate panel, and the bankruptcy appellate panel in October ruled, and I will just quote, We find the holding and reasoning of Ramirez 1 and 2 persuasive. Because debtor must pay Arcadia, which was the creditor, to retain the vehicle, contact between them is unavoidable. Such contact may encompass both written and oral communications. Therefore, the bankruptcy court did not err in holding that phone calls to collect payments in a ride-through jurisdiction are not per se improper collection activities under 11 U.S.C. Section 524.8.2. Now, if the sole issue in this case is are such phone calls per se illegal, that question has been answered. It has been answered by the BAP in a case in which Mr. Becker and his firm represented the appellant and could very well have sought this Court's review if indeed they wish to establish that rule or overturn that rule as a rule of law in this circuit. If, as the district court found, that legal question per se illegality of post-discharge phone calls is not the sole issue in the case, then we have to look at what other issues there are in the case and see whether the per se illegality issue predominates, not just exists, but predominates. And it clearly does not, because, as the trial court found, if the answer is anything but any phone call at all on any subject, no matter what is said is wrong, then you have to go and look at every phone call to make sure that it was, in fact, first of all, solicitation rather than, hello, how are you? Have you changed address? You know, I'm sorry, your check, you know, you have to sign the check. Actually, you can't send it in without maker's signature. Yeah, there are a million kinds of phone calls that creditors can have with debtors after discharge in these ride-through circumstances. And the trial court quite properly found that the question of figuring out whether a post-discharge phone call was that sort of call, an innocent one, or an aggressive harassing collection effort, would be an individual question which would predominate. And that's quite apart from the issue on which the trial court also found there was a predominance of non-common issues, namely the conflict among the circuits. Since that comes up in both the typicality analysis and the predominance analysis, I'd like to move to that. You've heard from Mr. Becker this morning that Rymakers decides that a conflict in federal law can't possibly prevent class certification. I think if you read Rymakers carefully, you'll find that that's not true. But even if it had been true in the particular factual context of that case, it cannot possibly be true in the particular factual context here, because here we're dealing with not a cause of action under federal law, but rather contempt. The discharge injunction is just that, an injunction. And the remedy for its violation, as this Court held in Walls v. Wells Fargo Bank, another case argued very ably by Mr. Becker and myself, well, on his part at least. That's okay. He complimented his own. The only remedy is contempt. There's no direct cause of action. When you're enforcing an injunction by contempt, surely it is not proper to hold a defendant in contempt for violating an order that the court that issued the order felt meant something different than the court in which we're now litigating the question. If you go to the Second Circuit, no, not Second Circuit, I'm sorry, one of the circuits where the ride-through option does not exist, Fourth, I believe Fifth, there a discharge means something different in the eyes of the judges who issue the discharge injunction, because there is no possibility of a ride-through and therefore no possibility that a creditor and a debtor will have any continuing relationship after discharge and after the close of the case. The collateral, if it exists, has either been acquired by the debtor through redemption or has been surrendered or there's been a reaffirmation. In any of those cases, the discharge injunction will no longer have a role in policing communications between debtor and creditor because there simply will be no occasion for such communications. Therefore, in this unique context, I think it's clear that the district court did not abuse its discretion in saying that whatever may the U.S. Supreme Court may ultimately hold as the correct rule of law as to the existence or nonexistence of the ride-through option, at least a defendant should not be penalized in a class action for having followed the law of the circuit in which the defendant was then operating. Let me move on to conflict with class members as a reason supporting Judge Tabrisian's finding of neither typicality nor adequacy of representation. Here it's quite clear, as every bankruptcy court has held in identical cases, Garci being the last in a long line of them, that it is objectively, it's not a question of whether a debtor wants this, you know, personally desires to be called. That's not the issue. The issue is whether objectively considering their interests, their legal interests, are those legal interests best represented by the kind of challenge that the Henrys wish to bring on their behalf in this case? And every bankruptcy judge who's considered the question has said emphatically no. And there's a reason for that unanimity. Debtors who use the ride-through option need to know whom to pay what when. And they need to have an easy way of being told by a creditor, you, in fact, sent me a check without a maker's signature on it. If you don't get it back to me with a signature on it, I'm going to grab your car. Because that's the only remedy, other remedy, that the creditor has in a ride-through case. There's no personal liability on the part of the debtor anymore. So the only creditor remedy is repossession. Now, obviously, a debtor does not go into a ride-through option if the debtor wishes to surrender the collateral. So it is in the interest of both the debtor and the creditor, objectively considered, to have some means of communication available so that errors in payment can be cured simply and easily without repossession of the collateral so that the debtor knows what to pay on time in the correct amount to the correct person to avoid, again, that repossession. The remedy that the Henrys seek here is contrary to the interests of the class members objectively considered. And that is a reason for denial of a class as a matter of due process, as well as Rule 23. Hansberry v. Lee quite clearly holds that where the class representative's interests are not convergent with those of the class, due process bars the use of the class tool because the class members' interests are not properly represented. And that you cannot substitute the defendant and the defendant's arguments for proper representation of a class. That's absurd. Your time has expired. Do you have any other points you'd like to make? Yes. Go ahead. Thank you, Your Honor. Superiority. You heard from Mr. Becker on only one of them, one of them, one of three factors that Justice or, excuse me, found to be lacking in respect to the superiority factor. Wish to control own litigation. Now, I would point out that Mr. Becker's firm was awarded $350,000 for slaving away for all those years on this case. And I would further point out that the reason for slaving away on all those years on this case was precisely because they sought class-wide. Okay. We understand that. Okay. So there was a lot that Judge Tabrisian could have based his finding on, that these kinds of cases may indeed be pursued by individuals because there is the possibility not only for an award of damages and punitive damages under 362 if there's a violation of the, not the discharge injunction, but the automatic stay, but also an award of attorney's fees. There are two other factors that Judge Tabrisian mentioned were the undesirability of concentrating this litigation in one form, precisely because of the divergence of law, and the unmanageability of the case as a class because of the fact that I mentioned at the outset, which is you'd have to look at each individual question, not only, excuse me, each individual's factual circumstances to determine the nature of the calls, the damage sustained, and a number of other factors. Thank you, Counsel. Thank you. Thank you, Your Honors. In that my time's expired, I'll be very brief. Just two quick points. First, Appelli's argument starts with the theory that, or he started his argument with the idea that the BAPs already decided that phone contact is not illegal, and so don't certify the class because the Henrys are going to lose. That's injecting the merits into class certification. Aside from that, the district court is neither bound or obligated to follow the BAPs' opinion, and we may ultimately someday be back here adjudicating that very question. But Appelli's argument signals the fundamental mistake that the district court made, which was to buy that line of reasoning, i.e., the Henrys are going to lose, as a basis for denying the class. The issue, though, is are the calls legal or not? If the calls are not legal, then all of the issues in the case, and that one central issue affects every single debtor in the case, irrespective of whether they want the calls to continue, and irrespective of whether or not one debtor got 10 calls or one debtor got 50 calls. Second, and I want to go briefly to the argument regarding conflict with the class. We've been doing this litigation for a long time, and one of the things that we hear a lot is that this is a tool for debtors. I think you don't need to look very far in this case to see the problem and the abuse that can occur under Appelli's scenario. Unfortunately, in law, we have to create bright lines, as this Court alluded to earlier today. The problem with creating the bright line on the other side of phone contact is that it results in the type of conduct that occurred in this case. 90 phone calls over about a year-and-a-half period demanding money from the creditor, or from the debtor. 90 phone calls. There is nothing in the record that suggests that that policy is any different for any other unnamed class member. So our argument to the courts has been that you have to draw a bright line in these cases, and that that bright line, in order to prevent the 90 phone calls that happened in this case, has to be, as Judge Bufford found, on the other side of phone solicitation, i.e. making phone solicitation illegal. Other than that, I would rest on the remainder of my brief. I think that the brief articulates the balance of Mr. Chilton's counsel. Thank you, counsel. Thank you both. The case just argued is ordered submitted.
judges: Trott, Tallman, Collins